UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RAFAEL AGUILAR, JOSE CASQUETE, PAULINO DE
JESUS LUNA, and ALEXIS ROMANO,

                                Plaintiffs,

               -against-

CALEXICO CINCO LLC, CALEXICO SEIS LLC,
CALEXICO 122 LLC, CALEXICO 278B LLC, CALEXICO
CARNE ASADA LLC, BRIAN VENDLEY, PETER
OLEYER, and CALEXICO HOLDING, LLC,

                               Defendants.
----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-6345-DG-SJB

**BULSARA, United States Magistrate Judge:**

      Plaintiffs Rafael Aguilar ("Aguilar"), Jose Casquete ("Casquete"), Paulino de

Jesus Luna ("Luna"), and Alexis Romano ("Romano," and collectively, "Plaintiffs") filed

this action on behalf of themselves and a putative Fair Labor Standards Act ("FLSA")

collective against Calexico Cinco LLC, Calexico Seis LLC, Calexico 122 LLC, Calexico

278B LLC, Calexico Carne Asada LLC, and Calexico Holding, LLC (collectively, "Calexico

Defendants"), along with Brian Vendley ("Vendley") and Peter Oleyer ("Oleyer," and

collectively, "Defendants"), alleging violations of FLSA, 29 U.S.C. §§ 201–219, and New

York Labor Law ("NYLL"), N.Y. Lab. Law §§ 160–199.  Plaintiffs worked at a series of

Mexican restaurants operated by Defendants.  Plaintiffs amended their complaint twice,

resulting in the operative pleading, the Second Amended Complaint ("SAC").  (Second

Am. Compl. dated July 31, 2023 ("SAC"), Dkt. No. 39).  Defendants have moved to

dismiss the SAC in full.  For the reasons explained below, the Court recommends that

Defendants' motion be granted in part and denied in part, and Plaintiffs be granted

leave to amend their complaint to correct the deficiencies identified herein.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of Defendants' motion to dismiss, the Court is "required to treat [the SAC's] factual allegations as true, drawing all reasonable inferences in favor of [Plaintiffs] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

Defendants own and operate a chain of restaurants throughout New York City under the trade name "Calexico." (SAC ¶ 9). Calexico Holding is a Delaware limited liability company that acts as a holding company for five wholly owned subsidiaries, (*id.* ¶ 10): (1) Calexico Cinco, which operates the restaurant at 99 2nd Avenue in Manhattan ("Calexico East Village"); (2) Calexico Seis, which operates the restaurant at 32-07 30th Avenue in Queens ("Calexico Astoria"); (3) Calexico 122, which operates the restaurant at 1491 2nd Avenue in Manhattan ("Calexico Upper East"); (4) Calexico 278B, which operates the restaurant at 278B 5th Avenue in Brooklyn ("Calexico Park Slope"); and (5) Calexico Carne Asada, which operates the restaurants at 645 Manhattan Avenue ("Calexico Greenpoint") and 122 Union Street in Brooklyn ("Calexico Red Hook"). (*Id.* ¶¶ 9, 11–15). Vendley is the owner and operator of the restaurants, and Oleyer is a chef, partner, and principal of the Calexico Defendants. (*Id.* ¶¶ 16–17). The Calexico restaurants are all Mexican restaurants that utilize the same website, the same trademarked name, and similar menus. (*Id.* ¶ 18). The restaurants also use the same website for job applications, a centralized human resources department, and a shared employee handbook. (*Id.*).

Aguilar was employed as a line cook at the Calexico Astoria location between November 2021 and January 31, 2022.  (SAC ¶ 32).  He regularly performed duties such as cooking and transporting ingredients between storage and the kitchen.  (*Id.* ¶ 38).  Aguilar alleges that he worked five days each week—first from 3:00 P.M. to 11:00 P.M. for the first month of his employment, and then from 10:00 A.M. to 6:00 P.M. thereafter.  (*Id.* ¶ 33).  During his shift, he was allocated a 30-minute, unpaid lunch break.  (*Id.* ¶ 36).  However, throughout his employment and "on a daily basis," Aguilar's manager would require him to work during his lunch break.  (*Id.*).  Aguilar was also required to work for around 15 minutes after his shift ended, approximately twice per week.  (*Id.* ¶ 35).  He was paid $19.00 per hour.  (SAC ¶ 34).

Casquete worked as a dishwasher at the Calexico Park Slope location between June 2015 and June 2019.  (*Id.* ¶ 41).  Casquete's duties included washing dishes, prepping food, and working at the front of the restaurant.  (*Id.* ¶ 47).  He worked five days per week, from 8:00 A.M. to 4:00 P.M.  (*Id.* ¶ 42).  During his shift, he was allocated a 30-minute, unpaid lunch break.  (*Id.* ¶ 45).  However, throughout his employment and on a daily basis, Casquete was required to work through his lunch break.  (*Id.*).  Casquete was also required to stay between 20 and 30 minutes after his shift ended, approximately three to four times per week.  (SAC ¶ 44).  He was paid the prevailing minimum wage throughout his employment.  (*Id.* ¶ 43).

Luna worked as a line cook at the Calexico Park Slope location between June 2013 and 2017, and then as a line cook at the Calexico Red Hook location between 2017 and August 2019.  (*Id.* ¶ 50).  Between June 2013 and June 2014, Luna worked from 8:00 A.M. to 4:00 P.M. two days per week, and from 4:00 P.M. to 2:00 A.M. three days per week.  (*Id.* ¶ 51).  Between June 2014 and August 2019, he worked from 8:00 A.M.

to 4:00 P.M. five days per week.  (*Id.*).  During his shifts, he was allocated a 30-minute, unpaid lunch break, but on a daily basis, Luna was required to work during his lunch break.  (*Id.* ¶ 53).  Luna was paid $15.00 per hour throughout his employment.  (SAC ¶ 52).

Romano worked as a dishwasher at the Calexico Park Slope location between January 2017 and July 2017.  (*Id.* ¶ 57).  Throughout his employment, he worked from 3:00 P.M. to 10:00 P.M. three days per week, and from 7:00 A.M. to 10:00 P.M. two days per week.  (*Id.* ¶ 58).  During his shifts, he was allocated a 30-minute, unpaid lunch break, but on a daily basis, Romano was required to work through his lunch break.  (*Id.* ¶ 61).  Approximately five times during his employment, Romano was required to work for an extra hour after his shift ended.  (*Id.* ¶ 60).  He was paid $16.00 per hour throughout his employment.  (*Id.* ¶ 59).

All Plaintiffs allege that Defendants failed to follow various state notice and recordkeeping requirements, as required by the Wage Theft Prevention Act.  (SAC ¶¶ 27, 39–40, 48–49, 55–56, 63–68, 71–72, 89–90).  Specifically, Plaintiffs allege that the failure to provide wage notices and wage statements deprived them of their ability to know their wages and contest Defendants' calculations, and thus, resulted in delayed compensation and struggles in paying bills.  (*Id.* ¶¶ 66–68).  Plaintiffs also allege that Defendants failed to compensate them in a timely manner, as required for manual workers under NYLL § 191.  (*E.g.*, *id.* ¶¶ 37, 62, 70, 88).

Plaintiffs filed this action on October 20, 2022.  (Compl. dated Oct. 20, 2022, Dkt. No. 1).  On July 31, 2023, they filed the Second Amended Complaint, which is the operative pleading.  (SAC).  They allege seven causes of action: (1) failure to pay overtime compensation under FLSA; (2) failure to pay overtime wages under NYLL;

(3) failure to provide wage notices under NYLL § 195(1); (4) failure to provide wage statements under NYLL § 195(3); and (5) failure to timely compensate manual workers under NYLL § 191.  (*Id.* ¶¶ 74–91).

Defendants move to dismiss all of Plaintiffs' claims on several grounds. Defendants primarily argue that Aguilar has failed to state an overtime claim under FLSA, and thus, his FLSA claim should be dismissed, and the Court should decline to exercise supplemental jurisdiction for Plaintiffs' NYLL claims.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem. of Law"), Dkt. No. 43-1 at 1).  In the alternative, Defendants seek dismissal of Plaintiffs' state claims on other grounds.  First, Defendants claim that Plaintiffs have failed to allege that any of the Defendants qualify as their employers under FLSA or NYLL.  (*Id.*).  Second, Defendants move to dismiss Plaintiffs' claims under New York's Wage Theft Protection Act ("WTPA"), arguing that there is no private cause of action under NYLL § 191 and that Plaintiffs do not have Article III standing to assert a claim under NYLL § 195.  (*Id.* at 1–2).  Lastly, Defendants move to dismiss Plaintiffs' NYLL putative class action for failure to comply with the Class Action Fairness Act ("CAFA").  (*Id.* at 2).

As explained below, the Court recommends that the motion to dismiss be denied in all respects, except that Plaintiffs' FLSA and NYLL overtime claims against Vendley and Oleyer and Plaintiff Luna's NYLL overtime claims should be dismissed.

<u>DISCUSSION</u>

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of . . . claims for relief."  *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally,

accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted); *Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

Once the facts are construed in the light most favorable to the non-moving parties—here, Plaintiffs Aguilar, Casquete, Luna, and Romano—to avoid dismissal, there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations omitted)). "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554, 555 (2007) (internal citations omitted).  The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading Co.*, No. 17-CV-652, 2018 WL 1521858, at \*2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249, at \*3 (Feb. 23, 2018).

I.    FLSA and NYLL Overtime Claims

Defendants move to dismiss Aguilar's FLSA overtime claim—which would remove the Court's only basis for federal subject matter jurisdiction—and all Plaintiffs' NYLL overtime claims for failure to state a cognizable claim.

A.    Aguilar's Overtime Claim Under FLSA

Aguilar has successfully stated an overtime claim under FLSA, sufficient to survive Defendants' motion to dismiss.  To survive a motion to dismiss an FLSA overtime claim, a plaintiff must allege that in at least one work week, he or she worked at least 40 hours and also worked some uncompensated time in that week in excess of the 40 hours.  *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  A pleading does not satisfy this requirement if it generally alleges that the plaintiff was not paid for overtime hours worked.  *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).  The requirement that plaintiffs "must allege overtime without compensation in a 'given' workweek," *Lundy*, 711 F.3d at 114, is "not an invitation to provide an all-purpose pleading template alleging overtime in 'some or all workweeks.'"  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).  Nor is it acceptable for a plaintiff to just track "the statutory language of the

FLSA . . . but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89.

Although plaintiffs cannot satisfy the standard by making "template" pleadings, plaintiffs also need not identify a "specific" work week in which they worked more than 40 hours, if they have general allegations about their work schedule that suggests they worked overtime regularly:

> [The] pleading standard is unmet if all that plaintiffs allege is that at *some* undefined period in their employment they worked more than forty hours in a single week. Such an allegation would be far too vague and unhelpful for putting a defendant on notice of the alleged violation. The pleading standard is satisfied, however, if plaintiffs allege that their regularly scheduled workweek for a given period of time included more than forty hours of work, so that they were eligible for overtime during *every* week in which they worked their regular schedule. In that case, a plaintiff . . . need only allege the period of time during which they were employed.

*Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 116–17 (2d Cir. 2023).

In the SAC, Aguilar alleges that his regular scheduled work week was 37.5 hours per week—7.5 hours per day, five days per week. (SAC ¶ 33). He alleges that he worked all these hours, as well as additional, uncompensated hours. (*Id.*). These allegations amount to a plausible claim that he worked uncompensated overtime.

Aguilar claims that "[t]hroughout his employment," and "on a daily basis," he was approached by his employer with tasks to be completed during his 30-minute lunch break. (*Id.* ¶ 36). This allegation is sufficient to conclude that Defendants are not entitled to treat this 30-minute period as uncompensated time. For time to qualify as a "bona fide meal period" which is uncompensated, an employee must be "completely relieved from duty." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) (quotations omitted), *aff'd*, 752 F. App'x 33, 37 (2d Cir. 2018). "That standard is not met if the employee is required to be on-call to handle whatever work arises during

8

the lunch break." *Herrera*, 84 F.4th at 116.  Thus, in alleging unpaid time during a purported lunch break, a plaintiff is "not require[d] . . . to quantify how many minutes were spent during any given lunch break actually attending to customers in order to demonstrate that their lunch break was not a 'bona fide meal period.'"  *Id.* (alteration omitted) (quoting 29 C.F.R. § 785.19(a)).

Aguilar alleges that he worked during his 30-minute lunch break every day.  (SAC ¶ 36).  This allegation is sufficient to conclude that this period did not qualify as a bona fide meal period.  *See, e.g.*, *Herrera*, 84 F.4th at 116 (holding that plaintiffs' allegation that they were required to work during their "daily" lunch break period counted as specific, uncompensated time, sufficient to state an overtime claim).  If the 30 minutes per day (2.5 hours a week) are added to his regular work schedule, Aguilar worked a total of exactly 40 hours per week.

Of course, he would have to have worked more than 40 hours per week to state an overtime claim.  He alleges he did.  Aguilar alleges that "[a]pproximately twice per week," he was "required to stay back fifteen (15) minutes after clocking out of his shift to help finish cleaning the kitchen."  (SAC ¶ 35).  The extra 30 minutes beyond 40 hours constitutes unpaid overtime.  Though not a large overtime claim, it is an overtime claim nonetheless.  Aguilar need only allege *some* specific, uncompensated amount of time in excess of those 40 hours per week.  *See Garcia v. Chipotle Mexican Grill, Inc.*, No. 16-CV-601, 2016 WL 6561302, at *5 (S.D.N.Y. Nov. 4, 2016) ("In accordance with *Lundy*, Plaintiff alleges 40 hours of work every week during his employment, as well as some uncompensated amount of time in excess of 40 hours per week on average."); *Herrera*, 84 F.4th at 115 (holding that allegations that plaintiffs worked "approximately an additional five hours of work per week in excess of forty hours per week" were sufficient

9

to "carry the Plaintiffs over the forty-hour bar" (emphasis omitted)).  Having done so, Aguilar has stated an overtime claim that resists dismissal.

Therefore, the Court recommends that Defendants' motion to dismiss Aguilar's FLSA overtime claim be denied.

### B.    Plaintiffs' Overtime Claims Under NYLL

Defendants seek to dismiss the NYLL overtime claims of Aguilar, as well as the other plaintiffs, Casquete, Romano, and Luna.  Only Luna's overtime claim warrants dismissal.  "The pleading standard applicable to overtime claims under the NYLL is analytically identical to its federal counterpart, the Fair Labor Standards Act[.]" *Ramirez v. Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *18 (S.D.N.Y. Sept. 24, 2021) (applying *Lundy*).  As explained above, *supra* at pp. 7–10, Aguilar has stated a FLSA overtime claim.  He has thus pleaded a NYLL overtime claim.

Casquete and Romano also allege working specific hours above 40 hours per week.  Casquete alleges that he regularly worked 37.5 hours per week and that he was required to work through his 30-minute lunch break "on a daily basis," while also being asked to work for 20 to 30 minutes after his shift "approximately three to four times per week."  (SAC ¶¶ 42, 44–45).  Romano alleges that he regularly worked at least 44.5 hours per week, as well as additional hours during his lunch break and after his scheduled shift.  (*Id.* ¶¶ 58, 60–61).  Casquete's allegations amount to barely above 40 hours, a total of 41.5 hours, but constitute an overtime claim nonetheless.  And Romano's regular schedule of 44.5 hours per week is sufficient to state an NYLL overtime claim.  *See, e.g.*, *Herrera*, 84 F.4th at 115.

However, Luna's claim fails.  Luna alleges that his regular weekly schedule changed throughout his employment: between June 2013 and June 2014, he allegedly

worked 43.5 hours per week, and between June 2014 and August 2019, he allegedly worked 37.5 hours per week.  (SAC ¶¶ 50–51).  The period during which he worked 43.5 hours per week is outside of the NYLL statute of limitations of six years, and thus, Luna has not stated a cognizable NYLL overtime claim.  *See* NYLL § 198(3); *see, e.g.*, *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 369 & n.2 (E.D.N.Y. 2022) (adopting report and recommendation).[1]  Between October 2016 and August 2019—the period during which Luna worked that is within the NYLL statute of limitations—he regularly worked 37.5 hours per week, (SAC ¶ 51); like his co-plaintiffs, Luna also alleges that he was required to work through his 30-minute lunch break "on a daily basis," (*id.* ¶ 53).  However, Luna does not have any other allegations of unpaid additional time.  Thus, during the relevant period, Luna only alleges to have worked exactly 40 hours per week.  Having worked no more than 40 hours per week, he has failed to state an overtime violation under NYLL.  *See, e.g.*, *Lundy*, 711 F.3d at 114–15.

The Court therefore recommends that Defendants' motion to dismiss the Plaintiffs' NYLL overtime claims be denied as to Aguilar, Casquete, and Romano, but be granted as to Luna.

II.    <u>Defendants' Status as Employers</u>

Defendants seek dismissal of Plaintiffs' claims against two sets of defendants on the basis that they are not employers under FLSA or NYLL: first, individual Defendants Vendley and Oleyer, and second, the Calexico Defendants.  (Defs.' Mem. of Law at 12–19).

---

[1] Plaintiffs commenced this action on October 20, 2022.  (*See* Dkt. No. 1).

A.    <u>Individual Defendants Vendley and Oleyer</u>

Under FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  An individual may be jointly and severally liable to an employee under FLSA where the individual exercises "operational control" over that employee.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment."  *Id.*  "In identifying the persons or entities who qualify as 'employers,' . . . statutory definitions sweep broadly."  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).

In making this determination, the "economic reality" of the employment relationship is the core of the inquiry.  *Irizarry*, 722 F.3d at 104.  That is, courts look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotations omitted); *see, e.g.*, *Irizarry*, 722 F.3d at 110 (applying *Carter*); *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 4147241, at *6 (S.D.N.Y. Aug. 3, 2016) ("Generally, corporate officers and owners held to be employers under the FLSA have had some direct contact with the plaintiff employee, such as personally supervising the employee's work, including determining the employee's day-to-day work schedules or tasks, signing the employee's paycheck or directly hiring the employees." (quotations omitted and collecting cases)).

"[T]he 'economic reality' test encompasses the totality of the circumstances," and no single factor is dispositive.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  New York courts interpret the definition of "employer" under NYLL coextensively with the definition under FLSA.  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011).[2]

Plaintiffs' allegations as to Vendley and Oleyer are entirely conclusory.  There are only two paragraphs in the SAC that address Vendley and Oleyer's involvement as employers, and they are essentially identical, other than the Defendants' names.  Plaintiffs allege:

> [Vendley/Oleyer] exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. [Vendley/Oleyer] had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members.  At all times, employees of each Restaurant could complain to [Vendley/Oleyer] directly regarding any of the terms of their employment, and [Vendley/Oleyer] would have the authority to effect any changes to the quality and terms of employees' employment.  [Vendley/Oleyer] directly reprimanded any employee who did not perform his duties correctly.  [Vendley/Oleyer] exercised functional control over the business and financial operations of the Corporate Defendant.

(SAC ¶¶ 16–17).  "These conclusory allegations track nearly verbatim with the factors set forth in *Carter*'s formal economic reality test.  However, '[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice' to state a plausible claim for relief."  *Cho v. Osaka Zen Spa*, No. 19-CV-7935, 2021 WL

---

[2] The NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service," or "any individual . . . acting as employer."  NYLL §§ 190(3), 651(6).

1736813, at *4 (S.D.N.Y. May 3, 2021) (citation omitted) (quoting *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 585 (S.D.N.Y. 2020)).

Plaintiffs point to the exhibits attached to the SAC to support their argument that Vendley and Oleyer are individual employers.  (Pls.' Mem. of Law in Opp'n to Mot. to Dismiss ("Pls.' Opp'n"), Dkt. No. 43-3 at 8).  They make three assertions from them: (1) Vendley's and Oleyer's names are on the Calexico Defendants' liquor licenses; (2) the Calexico Defendants are marketed as a "family" business; and (3) an alleged former manager's review on Indeed.com states that the "[o]wners are actively involved with the direction of the company." (*Id.*).  Taken together, these assertions fall far short of satisfying the *Carter* factors.  To start, courts have agreed that an individual's positional status as a corporate officer alone—such that their name would be on licenses or other formal documents—cannot make an individual an employer under FLSA.  *See Copantitla*, 788 F. Supp. 2d at 310–11 (collecting cases).  In addition, these allegations do not show that Vendley and Oleyer plausibly exercised "operational control" over Plaintiffs—that is, that these individuals dictated the terms of Plaintiffs' employment, hired them, supervised them, or even knew them.  *See, e.g.*, *Solis v. ZEP LLC*, No. 19-CV-4230, 2020 WL 1439744, at *8 (S.D.N.Y. Mar. 24, 2020) (dismissing claim against alleged individual employer because the complaint "simply recites in conclusory fashion the statutory factors" and contains "no specific factual allegations" regarding *Carter* factors).

Therefore, the Court recommends that Defendants' motion to dismiss be granted and that Vendley and Oleyer be dismissed from the case.

B.    Corporate Defendants and Single Integrated Enterprise

Defendants also move to dismiss the Calexico Defendants because they have

failed to show that any of the restaurants were the Plaintiffs' employers.  (Defs.' Mem. of

Law at 14–19).  Plaintiffs have adequately pled that at least two of the Calexico

Defendants are their employers: Aguilar alleges to have directly worked at the Calexico

Astoria location—or Calexico Seis—and Casquete and Romano alleges to have directly

worked at Calexico Park Slope—or Calexico 278B.  (SAC ¶¶ 32, 41, 57).  Thus, Plaintiffs

have undoubtedly stated a claim against Calexico Seis and Calexico 278B as employers.

(*See* Pls.' Opp'n at 9).

For the remaining Calexico Defendants, Plaintiffs argue that they constitute a

"single integrated enterprise" and thus are collectively liable for Plaintiffs' alleged wage

violations.  (SAC ¶ 18).  "The joint employer doctrine, along with the 'single employer'

(or 'single integrated employer') doctrines have been developed to allow a plaintiff to

assert employer liability in the employment . . . context against entities that are not her

formal, direct employer."  *Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016)

(quotations omitted).  Under the single integrated enterprise theory, "an employee, who

is technically employed on the books of one entity, which is deemed to be part of a larger

single-employer entity, may impose liability for certain violations of employment law

not only on the nominal employer but also on another entity comprising part of the

single integrated employer."  *Id.* (quotations omitted).  Courts in this Circuit have

agreed that the single enterprise theory can be a basis for imposing FLSA liability on

entities for whom a party did not work for directly, given the statute's definition of an

"employer."  *Syed v. S&P Pharmacy Corp.*, No. 21-CV-6000, 2023 WL 2614212, at *2

(E.D.N.Y. Mar. 23, 2023); *see, e.g.*, *Huer Huang*, 459 F. Supp. 3d at 586–87 (applying

single enterprise theory to FLSA claim).  To allege liability under a single enterprise

theory, plaintiff must demonstrate facts under the following factors: "(1) interrelation of

operations, (2) centralized control of labor relations, (3) common management, and

(4) common ownership or financial control."  *Huer Huang*, 459 F. Supp. 3d at 586

(quotations omitted); *see also, e.g.*, *Ding v. Mask Pot*, No. 20-CV-6076, 2022 WL

4647847, at *3 (E.D.N.Y. Oct. 1, 2022) (applying the factors under the single integrated

enterprise doctrine).[3]

Plaintiffs have alleged sufficient facts for their claims against the remaining

Calexico Defendants to survive the motion to dismiss.  Plaintiffs allege, among other

things, that all the Calexico Defendants shared a website for advertising,

communication, and job applications.  (SAC ¶ 18).  All the restaurants use the

trademarked Calexico name and are alleged to have common ownership.  (*Id.*).  Finally,

Plaintiffs allege that the Calexico Defendants utilize a centralized human resources

department and a shared employee handbook.  (*Id.*).  "Whether two related entities are

sufficiently integrated to be treated as a single employer is generally a question of fact

not suitable to resolution on a motion to dismiss."  *Brown v. Daikin Am., Inc.*, 756 F.3d

219, 226 (2d Cir. 2014).  Thus, at this stage, Plaintiffs have met their pleading burden to

keep all the Calexico Defendants as parties in this case.  *See, e.g.*, *Syed*, 2023 WL

2614212, at *2–*3 (denying motion to dismiss where plaintiff alleged, *inter alia*,

common management and shared locations).

---

[3] Courts have applied the same factors to determine whether two or more entities
constitute a single integrated enterprise under NYLL.  *See Espinoza v. La Oficina Bar
Corp.*, No. 20-CV-1237, 2022 WL 987429, at *11 (E.D.N.Y. Mar. 1, 2022), *report and
recommendation adopted as modified*, 2022 WL 985836, at *3 (Mar. 31, 2022).

III.    Wage Theft Protection Act

Defendants move to dismiss all of Plaintiffs' WTPA claims.  First, they seek dismissal of Plaintiffs' claim under the WTPA's frequency of payments provision, NYLL § 191, on the grounds that there is no private cause of action.  (Defs.' Mem. of Law at 19–23).  Second, they seek to dismiss Plaintiffs' two claims under NYLL § 195—failure to provide wage notices and failure to provide wage statements—because Plaintiffs lack Article III standing.  (*Id.* at 23–24).

A.    Private Cause of Action Under NYLL § 191

NYLL § 191, which is in article 6 of the NYLL, requires that "manual worker[s]" be "paid weekly and not later than seven calendar days after the end of the week in which wages are earned."  NYLL § 191(1)(a).  Separately, under NYLL § 198(1-a), an employee who is "paid less than the wage to which he or she is entitled under the provisions of [article 6]" may initiate a private "wage claim" in the courts "to recover the full amount of any underpayment of wages."  *Id.* § 198(1-a).

"New York courts currently are split as to whether Section 191, together with Section 198, confers a private right of action, and the New York Court of Appeals has not yet addressed this question."  *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055, 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024).  On one hand, the Appellate Division, First Department's 2019 decision in *Vega v. CM & Associates Construction Management, LLC*, held that, read together, NYLL § 191 and § 198 confer an express private right of action for untimely payment of wages.  175 A.D.3d 1144, 1145–46 (1st Dep't 2019).  The First Department held that because NYLL § 198 confers a private right of action on employees for "underpayments" that violate article 6 of NYLL, and because NYLL § 191 is encompassed within article 6, ergo, "an employee is underpaid within the

meaning of Section 198 each time her employer is required, under Section 191, to pay her for one week of wages and instead pays her nothing on that date." *Zachary v. BG Retail, LLC*, No. 22-CV-10521, 2024 WL 554174, at *7 (S.D.N.Y. Feb. 12, 2024).  In reaching this decision, the *Vega* court found that the language of section 198 permitting claims for "underpayment" encompassed section 191 violations, because "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."  174 A.D.3d at 1145.  Additionally, the *Vega* court pointed to the legislative history and purpose—"to protect workers who are generally 'dependent upon their wages for sustenance,'" *id.* at 1146 (quoting *People v. Vetri*, 309 N.Y. 401, 405 (1955))—that is furthered by a private right of action to enforce the timely payment of wages.  *Id.* at 1146–47.[4]

On the other hand, the Appellate Division, Second Department's recent decision in *Grant v. Global Aircraft Dispatch, Inc.* held that there is no express or implied private right of action under NYLL § 191.  223 A.D.3d 712, 719 (2d Dep't 2024).  Unlike *Vega*, the Second Department interpreted the plain meaning of the term "underpayment" to be that an "employee has received a *lesser amount* of earnings than agreed upon, not that the employee received the agreed-upon amount one week later, on the regular payday."  *Id.* at 715 (emphasis added).  The Second Department found that section 198 was enacted to remedy "nonpayment and underpayment of wages, as

---

[4] The *Vega* court also pointed to the importance of the time-value of money: "The employee loses the use of money whether he or she is never paid, partially paid, or paid late."  175 A.D.3d at 1146 n.2.  Federal courts applying *Vega* have also pointed to this as a reason to support a private right of action under section 191.  *See, e.g.*, *Zachary*, 2024 WL 554174, at *8 ("[M]oney has a real time value, and the 2010 amendments to Section 198 were intended to allow employees to recover the full amount of any underpayment." (quotations omitted)).

distinct from the frequency of payment," *id.*, and that the legislative history supported

this interpretation.  *Id.* at 719 ("There is no reference in the legislative history of Labor

Law § 198 to the frequency or timing of wage payments[.]").[5]

"A federal court applying state law is 'generally obliged to follow the state law

decisions of state intermediate appellate courts.'"  *Skechers USA Retail*, 2024 WL

1142316, at *6 (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d

Cir. 2005)).  But "when there is 'an apparent split in authority among the Appellate

Divisions,' a federal court is not bound by the law of the department that would apply if

the case were filed in state court where the federal court sits, but rather must predict

'how the Court of Appeals would rule.'"  *Zachary*, 2024 WL 554174, at *5 (quoting

*Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000)).  Since the decision

---

[5] *Grant* also noted that the New York Court of Appeals in *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022), held that an anti-kickback provision in section 198 did not confer a private right of action.  *Grant*, 223 A.D.3d at 717; *see Konkur*, 38 N.Y.3d at 43.  The Second Department explained that *Konkur* raises doubt as to the validity of *Vega*, since both cases involved a provision in article 6 of NYLL.  *See Grant*, 223 A.D.3d at 717 ("Thus, the mere fact that a violation of the Labor Law had the effect of reducing employees' wages (even permanently) did not bring that Labor Law violation under the auspices of Labor Law § 198(1–a), which covers nonpayment and partial payment of wages."); *see also Georgiou v. Harmon Stores, Inc.*, No. 22-CV-2861, 2023 WL 112805, at *6 (E.D.N.Y. Jan. 5, 2023) (expressing "doubts" as to "the viability of *Vega* in light of *Konkur*").  But as the Honorable Brian M. Cogan explained:

> Despite my doubts about the viability of *Vega* in light of *Konkur*, *Konkur* does not rise to the level of "persuasive evidence" that the Court of Appeals would reject *Vega*.  *Konkur* addressed an implied cause of action for a different and unrelated provision of the NYLL.  To the extent *Konkur* discussed § 191's timely payment provisions, it recognized that the private right of action provided for by § 198(1-a) "must relate to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6," and specifically cited § 191 as one such substantive provision.

*Georgiou*, 2023 WL 112805, at *6 (quoting *Konkur*, 38 N.Y.3d at 44).

in *Grant*, most federal courts in the Second Circuit that have addressed this question have concluded that the Court of Appeals would likely agree with *Vega* and conclude a private right of action exists. *See Skechers USA Retail*, 2024 WL 1142316, at \*6 (collecting cases).[6]

This Court agrees with the majority of New York federal courts that the Court of Appeals would likely adopt the reasoning expressed in *Vega* and find an express private right of action in NYLL § 191 and § 198. The Court recommends that Defendants' motion to dismiss Plaintiffs' section 191 claims be denied.

### B.    Standing Under NYLL § 195

The WTPA requires employers to provide a written wage notice to employees "within 10 business days of his first day of employment." *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at \*29 (S.D.N.Y. June 9, 2016).

> [E]mployers [must] provide their employees a written notice with the following information: (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any "doing business as" names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

---

[6] To the Court's knowledge, only one case in the Eastern District of New York has ruled on this issue, in *Garcia v. Skechers USA Retail, LLC*, where the court followed *Vega*. 2024 WL 1142316, at \*6. Two cases in the Southern District of New York have also followed *Vega*. *See Zachary*, 2024 WL 554174, at \*7; *Gamboa v. Regeneron Pharms., Inc.*, No. 22-CV-10605, 2024 WL 815253, at \*6 (S.D.N.Y. Feb. 27, 2024). The Northern District of New York also sided with *Vega* in *Bazinett v. Pregis LLC*, No. 23-CV-790, 2024 WL 1116287, at \*7–\*9 (N.D.N.Y. Mar. 14, 2024), while the Western District of New York followed *Grant*, *see Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227, 2024 WL 989704, at \*8–\*11 (W.D.N.Y. Mar. 7, 2024).

*Id.* (quoting *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 474 (S.D.N.Y. 2015)). The written notice must be "in writing in English and in the language identified by each employee as the primary language of such employee." NYLL § 195(1)(a). The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid. *Id.* § 195(3).

Defendants contend Plaintiffs do not have Article III standing under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Defendants claim that, "[f]ollowing *TransUnion*, New York federal courts have consistently found that plaintiffs do not have standing to bring claims for violations of NYLL § 195 where, like here, plaintiffs did not suffer any injury beyond the alleged statutory violation itself." (Defs.' Mem. of Law at 23). Although some federal courts have dismissed section 195 claims under *TransUnion*, *see, e.g.*, *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 340 (S.D.N.Y. 2022), courts have not gone so far as to conclude that a plaintiff categorically cannot state a concrete and particularized injury from failure to receive wage notices and statements. *See, e.g.*, *Sanchez*, 643 F. Supp. 3d at 373 n.5 ("This is not to say that a plaintiff could never have Article III standing to assert a wage statement claim."); *see also, e.g.*, *Bueno v. Buzinover*, No. 22-CV-2216, 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) ("The Court thus finds that, by alleging that they were not furnished the statutorily required notices, plaintiffs have asserted a concrete and particularized injury sufficient to confer standing for their WTPA wage notice and wage statement claims.") (collecting cases). For example, a plaintiff has standing for this claim when they specifically allege "'downstream consequences' from the defendant's

failure to provide information as required by statute." *Sanchez*, 643 F. Supp. 3d at 373 n.5 (quoting *TransUnion*, 141 S. Ct. at 2214).

In the SAC, Plaintiffs allege specific injuries from Defendants' failure to provide wage notices and statements: the failure to provide wage notices and statements deprived them of the knowledge that they were being underpaid and of the ability to contest Defendants' wage calculations. (SAC ¶ 67). Without proper notice and wage statements, "Defendants were able to hide their wrong-doing from employees." (*Id.* ¶ 68). As a result of this alleged deception, employees' wages were delayed: specifically, Defendants "delay[ed] . . . proper compensation to low wage earners" and "deprive[d] employees of timely compensation." (*Id.* ¶ 67). Plaintiffs also allege that the delayed wage payments "caused Plaintiffs to struggle to timely pay bills." (*Id.* ¶ 68). These alleged downstream consequences are sufficient to allege a concrete injury stemming from Defendants' failure to provide wage statements and wage notices. *See, e.g.*, *Martinez v. Finger Mgmt. Corp.*, No. 23-CV-5901, 2024 WL 2114330, at *2 (S.D.N.Y. May 10, 2024) ("Martinez has plausibly alleged that he suffered monetary harm because Finger's failure to provide accurate wage notices and statements hurt his ability to assess whether he was being properly paid and therefore impaired his ability to promptly raise issues of underpayment with Defendants. The inability to promptly contest the wage and hour deficiencies deprived Martinez of his income for longer that he would have been had he been able to raise his underpayment claim earlier."); *Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, at *17 (S.D.N.Y. Mar. 11, 2024) ("What is more, Plaintiffs plausibly establish that this obfuscation not only hindered Plaintiffs from realizing their rights at the time of payment, but also injured

Plaintiffs by enabling the actual underpayment of their wages, necessitating this action.").

Therefore, the Court recommends that Defendants' motion to dismiss Plaintiff's WTPA claims under NYLL § 195 be denied.

IV.    Class Action Fairness Act (CAFA)

Defendants move to dismiss Plaintiffs' class action allegations on jurisdictional grounds because "the local controversy exception of CAFA divests the court of jurisdiction." (Defs.' Mem. of Law at 24). But Plaintiffs' NYLL claims do not rely on CAFA jurisdiction, but rather, on supplemental jurisdiction over all their state law claims. (Pls.' Opp'n at 22). "CAFA provides federal district courts 'with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000.'" *Palladino v. JP Morgan Chase & Co.*, No. 23-CV-1215, 2023 WL 4034358, at *3 (E.D.N.Y. June 15, 2023) (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). To dismiss a CAFA class action claim under one of the mandatory exceptions to CAFA,[7] the Court must find CAFA is the basis for jurisdiction in this case. *See id.* at *4. It is not.

CAFA is a "jurisdiction-vesting statute" that extends federal subject matter jurisdiction "over certain class actions between diverse parties" that would not otherwise be justiciable in federal court. *See Ghaznavi v. De Longhi Am., Inc.*, No. 22-

---

[7] "CAFA provides three exceptions to original jurisdiction: the so-called 'local controversy,' 'home state' controversy, and 'interests of justice' exceptions. The local controversy and home state exceptions to CAFA jurisdiction mandate that district courts decline jurisdiction if certain elements are present that identify a case with primarily in-state class members seeking relief principally for in-state harm by citizens of the same state." *Palladino*, 2023 WL 4034358, at *3 (citations omitted).

CV-1871, 2023 WL 4931610, at *7 (S.D.N.Y. Aug. 2, 2023).  But "CAFA is an independent anchor of [original] jurisdiction." *F5 Cap. v. Papas*, 856 F.3d 61, 80 (2d Cir. 2017).  Because Plaintiffs have asserted a claim under FLSA, the Court already has original, federal question jurisdiction. *See* 28 U.S.C. § 1331.  As such, its jurisdiction over Plaintiffs' NYLL class action claims is not pursuant to CAFA, but instead, to 28 U.S.C. § 1367(a), the supplemental jurisdiction statute. *See, e.g.*, *Santana v. Fishlegs, LLC*, No. 13-CV-1628, 2013 WL 5951438, at *6 (S.D.N.Y. Nov. 7, 2013) ("The Court finds the exercise of supplemental jurisdiction over the state law claim to be proper, and therefore does not reach the question of jurisdiction under CAFA.").  As result, CAFA's absention or exclusion of certain class actions—including those cited by Defendants— are inapplicable and irrelevant, since CAFA jurisdiction is not implicated here. *See, e.g.*, *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 853 (N.D. Ill. 2013) ("This is a nationwide collective action alleging violations of the Fair Labor Standards Act ('FLSA') and an Illinois state law putative class action based on the application of an automatic 30-minute meal break deduction policy without ensuring that employees do not work through all or part of their meal break.  This court has original jurisdiction over plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. . . .  [I]t would appear that jurisdiction under CAFA is excluded because more than two-thirds of the class members are citizens of Illinois . . . .  But even if that exclusion applies, this court would have supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367(a)." (citation omitted)).

Therefore, the Court recommends that Defendants' motion to dismiss Plaintiffs' NYLL class action claim be denied.

## CONCLUSION

For the reasons described above, the Court recommends that Defendants' motion to dismiss be granted in part and denied in part.  Specifically, the Court recommends that Defendants' motion to dismiss be granted as to:

- Luna's NYLL overtime claim with prejudice.

- All claims against Vendley and Oleyer, without prejudice, and leave to amend be granted solely as to the claims against them.

The Court recommends that Defendants' motion to dismiss be denied as to:

- Aguilar's FLSA overtime claim.

- Aguilar's, Casquete's, and Romano's NYLL overtime claims.

- The FLSA and NYLL claims against all Calexico Defendants.

- Plaintiffs' WTPA claims under NYLL § 191 and § 195.

- Plaitniffs' NYLL putative class action claim.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report.  Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision." (quotations omitted)).


SO ORDERED.

_/s/ Sanket J. Bulsara_ June 28, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York